IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| OUMAR DIENG, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 2009-0068 |
| | : | |
| COLLEGE PARK HYUNDAI | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action, brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, are: (1) a motion for leave to file affidavits by Plaintiffs Oumar Dieng, Tarig Abdalla, Angela Diaz, Jeff LeMay, and Amagueye Jacques Gueye[1] (Paper 6); and (2) a motion to dismiss and compel arbitration by Defendant College Park Hyundai. (Paper 3). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss and compel arbitration will be granted. Although the supplemental affidavits do not change the result, the motion for leave to file them will be granted.

**I.   Background**

Plaintiffs are former employees of Hyundai, a business engaged in the selling of automobiles and parts to customers and providing repairs for Hyundai vehicles in the Maryland area. Although

---

[1] Mr. Gueye's middle name is misspelled in the complaint and consequently on the docket. The correct spelling is "Jacques."

English is not their first language, all Plaintiffs are fully capable of speaking, reading, and writing in English.  On the day Plaintiffs began work, they were asked to read and sign a number of employment related documents including an arbitration agreement. The parties disagree on whether the agreement was separate and distinct from other employment related documents.  Plaintiffs maintain that the agreement was located in the beginning of the Employee Handbook and was ripped out after it was signed. (Paper 4, Ex. 1-4 ¶ 7).  Defendant contends that the agreement was presented in such a way that there could be no mistake that it was a separate and independent document.  (Paper 7, at 22).

The agreement to arbitrate is titled in boldface and capitalized headings: "**AGREEMENT TO SUBMIT ALL EMPLOYMENT DISPUTES TO ARBITRATION.**"  (Paper 3, Ex. A, at 2).  The first paragraph states: "**ANY CLAIM THAT ARISES OUT OF, OR RELATES TO, MY EMPLOYMENT OR TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION**."  In the following paragraph, the arbitration agreement specifically refers to any claim arising out of "(i) any statute or regulation; (ii) tortious conduct [or] (iii) any breach of contract."  Additionally, the arbitration agreement requires that the aggrieved party give notice to the other party within 60 days of the date on which that party first knew, or should have known, of the facts creating the basis for the dispute and submit the claim to arbitration within 180 days

2

of the date the party knew, or should have known, of the claim. Furthermore, directly above each Plaintiff's signature, it states in bold: "**By my signature, I confirm that I have read and understand each of the four sections set forth above in this Agreement**." If Plaintiffs had chosen not to sign the agreement, or any other employment related document, Defendant would not have extended employment to them. (Paper 7, Ex. F ¶ 10).

Plaintiffs' primary job duties included soliciting the customers' interest of Hyundai vehicles and ensuring the settlement of vehicle sales. Plaintiffs were to receive commissions for all cars that they sold. The Hyundai "Vehicle Pay Plan" described how commissions would be calculated and paid. However, Plaintiffs allege that the Vehicle Pay Plan did not fully disclose "charge backs" or other deductions that would be employed when calculating commissions. Plaintiffs contend that the failure to disclose how commissions were calculated resulted in a "fictitious" commission scheme. (Paper 1 ¶ 28). Plaintiffs also allege that they were often scheduled to work over 40 hours and upward to 60 hours per week, and never received time-and-a-half pay when they worked over 40 hours a week. (Paper 1 ¶ 33, 41).

On January 13, 2009, Plaintiffs filed a five count complaint against Defendant alleging: (i) a violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*; (ii) a common law action for breach of contract; (iii) a common law action for hostile work

environment; (iv) a common law action by LeMay for wrongful termination and breach of contract; and (v) a violation of the Maryland Wage Payment Statute, Md. Code Ann., Lab. & Empl. §3-401. (Paper 1).

In response, Defendant filed a motion to dismiss and compel arbitration on February 10, 2009, arguing that Plaintiffs executed valid and binding arbitration agreements, and therefore this court has no jurisdiction over this dispute pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq.*, and the Maryland Uniform Arbitration Act ("MUAA"), Md. Code Ann., Cts. & Jud. Proc. § 3-206(a).  (Paper 3).

Plaintiffs filed a memorandum in opposition to Defendant's motion on February 27, 2009, arguing that only the FAA provides the governing law and that the arbitration agreements are invalid because they are procedurally and substantively unconscionable. Consequently, Plaintiffs assert that the court should retain jurisdiction.  (Paper 4).

Defendant filed a reply memorandum on March 13, 2009, contending that regardless of whether the FAA or the MUAA provides the governing law in determining the validity of the agreement, the outcome would be no different because the same policy favoring voluntary and private dispute resolutions is present in both. (Paper 7, at 2).  Furthermore, Defendant argues that the agreement

is neither procedurally nor substantively unconscionable and is, therefore, fully enforceable.  (Paper 7, at 3).

## II.  Standard of Review

The parties disagree on whether the FAA or the MUAA provides the governing law in determining the validity of the agreement. However, the statutes are nearly identical to one another and the outcome is the same under both statutes.  *See Walther v. Sovereign Bank,* 386 Md. 412, 423-24 (2005)(explaining that the MUAA was "purposefully meant to mirror the language of the FAA.").  The MUAA has been called the state analogue to the FAA; the same policy favoring voluntary and private dispute resolutions is present in both.  *See, e.g., Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)(noting the "liberal federal policy favoring arbitration agreements"); *Holmes v Coverall N. Am., Inc.*, 336 Md. 534, 541 (1994)(explaining that "[t]he same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts" and "[w]e therefore rely on decisions interpreting the Federal Arbitration Act").  In nearly identical language to that found in Section 2 of the FAA, the MUAA provides that a "written contract to submit to arbitration any controversy arising between the parties . . . is valid, enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract."  Md. Code Ann., Cts. & Jud. Proc. § 3-206.

When an issue in a judicial proceeding is referable to arbitration, the FAA requires the court, upon a motion of one of the parties, to stay the proceeding until that issue is arbitrated. 9 U.S.C. § 3; *see also Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). However, despite the terms of § 3, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

## III. Analysis

### A.    Consideration

In deciding whether parties agreed to arbitrate a particular dispute, courts first ask whether the parties agreed to submit their claims to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). In so doing, courts should apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Maryland contract law, a legally binding agreement must be supported by sufficient consideration. *See Cheek v. United Healthcare of the Mid-Atlantic, Inc.,* 378 Md. 139, 147 (2003). A promise may become consideration for another promise only when it constitutes a binding obligation. *Id.* at 148. When a promise is composed of words in a promissory form that does not actually bind

6

or obligate the promisor to do anything, the promise is said to be "illusory" and is insufficient to establish consideration. *Id.* at 148-49.

Plaintiffs argue that the promise to arbitrate in this case is illusory because Defendant retains an unlimited right to alter or revoke its promise to submit to arbitration. Specifically, Plaintiffs allege that the arbitration agreement was located in the Employee Handbook, which contained a provision giving Defendant the right unilaterally to change or modify policies and benefits contained therein.

To this end, Plaintiffs contend that the case at bar is identical to the situation presented in *Cheek*, 378 Md. 139. In *Cheek*, the plaintiff signed an arbitration policy containing a provision giving the employer-defendant the right to "alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice." *Id.* at 142-43. The Court of Appeals of Maryland found there was no real promise on the part of the defendant-employer to create a binding obligation. *Id.* at 149. Thus, the agreement to arbitrate lacked sufficient consideration to support an enforceable contract. *Id.*

Defendant contends that this case is distinguishable from *Cheek* because the agreement to arbitrate and the Employee Handbook are separate and distinct documents. Thus, the provision giving the employer the unilateral right to alter or revoke the policies

and benefits in the Employee Handbook does not affect the Defendant's binding obligation in the agreement to arbitrate.

The facts are uncontroverted that the agreement to arbitrate was not a policy or benefit contained in the Employee Handbook and, thus, was not affected by the Company's ability unilaterally to change or revoke the handbook's policies. First, the provision giving the company the ability to modify the policies contained in the Employee Handbook states in boldface and capitalized writing that the Handbook is "**NOT A CONTRACT OR ANY OTHER FORM OF BINDING AGREEMENT.**" (Paper 3, Ex. A, at 2). In stark contrast, the language contained in the agreement to arbitrate uses obligatory language demonstrating that the document was to create a binding obligation: "**<u>ANY CLAIM</u> THAT ARISES OUT OF, OR RELATES TO, MY EMPLOYMENT OR TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, <u>MUST BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION</u>**."

Second, the document containing the agreement to arbitrate includes a separate acknowledgment form where the employee affirmed in writing that he had received a copy of the Employee Handbook, read it carefully, and agreed to comply with its rules and procedures. The fact that both agreements were contained in the same document suggests that the agreement to arbitrate is not a policy incorporated within the Handbook. It would be redundant to require one's employees to sign an acknowledgment form agreeing to all of the policies in the Employee Handbook and then have them

8

sign another agreement on the opposite page reaffirming their consent to abide by a specific policy contained therein.  A more consistent interpretation is that the document contains two separate agreements addressing different topics.

Plaintiffs argue next that even if the contract is separate and distinct, it was not supported by adequate consideration because the agreement does not expressly state that the employer was similarly bound by the arbitration process.  This argument fails because its premise is mistaken.  The United States Court of Appeals for the Fourth Circuit directly addressed the issue of whether an agreement to arbitrate proffered by the employer must expressly bind the employer to resolve disputes through the arbitration process in *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997).  In *O'Neil*, the plaintiff signed an acknowledgment form agreeing to submit all employment disputes to arbitration. Although the agreement did not expressly state whether the employer was similarly bound by the arbitration process, the Fourth Circuit found that "such a proffer clearly implied that both the employer and the employee would be bound by the arbitration process." *Id.* at 274; *see also Johnson v. Circuit City Stores*, 148 F.3d 373, 376 (4th Cir. 1998); *Holloman v. Circuit City Stores*, 391 Md. 580, 593 (2006).  Applying the controlling authority to this case, the agreement to be bound by arbitration was a mutual one and

constitutes   sufficient   consideration   for   this   arbitration
agreement.

### B.   Unconscionability

Plaintiffs   also   argue   that   the   agreement   is   unconscionable.
In   particular,   Plaintiffs   contend   that   the   agreement   is
procedurally unconscionable because it was not provided to them in
advance of their reporting to work and Defendant never explained to
them   how   the   arbitration   agreement   affected   their   rights.
Furthermore,  Plaintiffs  argue  that  the  agreement  is  substantively
unconscionable   because   it   is   replete   with   vague   and   ambiguous
language  which  no  one  but  those  involved  in  the  drafting  of  the
document  could  ascertain.   In  response,  Defendant  contends  that  the
agreement   is   neither   procedurally   nor   substantively   unfair.
Instead,  Defendant  maintains  that  Plaintiffs  are  using  a  "shot  gun"
approach  by  utilizing  every  possible  avenue  to  avoid  binding
arbitration   and   all   of   their   arguments   are   without   merit.
Plaintiffs'  contentions  on  this  point  are  unpersuasive.

The  FAA  states  that  an  agreement  to  arbitrate  "shall  be  valid,
irrevocable,  and  enforceable,  *save  upon  such  grounds  that  exist  at
law  or  in  equity  for  the  revocation  of  any  such  contract*."   9
U.S.C.  §  2  (emphasis  added).   In  *Doctor's  Assoc.,  Inc.  v.
Casarotto*,  517  U.S.  681,  687  (1996),  the  Supreme  Court  of  the
United   States   held   that   an   arbitration   agreement   could   be

challenged using "generally applicable contract defenses, such as fraud, duress, or unconscionability."

Maryland contract law on unconscionability contains two components, a procedural and substantive aspect.  In *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), the Fourth Circuit explained the particular characteristics of both procedural and substantive unconscionability:

> Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"), while procedural unconscionability deals with the process of making a contract—"bargaining naughtiness" (for instance, "Just sign here; the small print on the back is only our standard form"). Each of these branches of unconscionability has common-law cousins; procedural unconscionability looks much like fraud or duress in contract formation, and substantive unconscionability reminds us of contracts or clauses contrary to public policy or illegal.

*Id.* at 296 n.12 (quoting J. White & R. Summers, Uniform Commercial Code § 4-3, at 186 (3[d] ed. 1988) (footnote omitted).

**1.   Procedural Unconscionability**

Plaintiffs initially contend that the arbitration agreement is procedurally unconscionable because the agreement was not provided to them in advance of reporting to work.  Plaintiffs argue that because English is not their first language, they needed time to consult with counsel in advance of executing the document. Plaintiffs also argue that Defendant failed to explain how

11

arbitration worked or how their rights would be affected under the agreement.    In its simplest terms, Plaintiffs argue that they should not be held to an agreement that they signed, but did not have or take the time to read and understand.

Plaintiffs' argument has no merit.   The Court of Appeals of Maryland expressly rejected this argument in *Walther v. Sovereign Bank*, 386 Md. at 444.    ("If petitioners did not [read the arbitration agreement] before they signed the agreement, they have no person to blame but themselves . . . [W]e are loath to rescind a conspicuous agreement that was signed by a party whom [sic] now, for whatever reason, does not desire to fulfill that agreement.").

Moreover,  Plaintiffs  cannot  claim  that  the  arbitration agreement at issue was inconspicuous.  The agreement was not buried in the middle of a lengthy contract nor was it written in fine print.   Instead, the agreement was presented on the second page of two  page  document  and  was  written  in  **bold**,  <u>underlined</u>  and CAPITALIZED lettering.    Therefore, in order for the arbitration agreement at issue to be procedurally unconscionable, there must be something more.

Plaintiffs next argue that the arbitration agreement should be set aside because no bargaining took place between the parties and, thus, there was not a mutual exchange of promises to arbitrate.   In effect, plaintiffs contend that the arbitration agreement amounts to a contract of adhesion.

A contract of adhesion has been defined as one that is usually prepared in printed form, "'drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" *Id.* at 430 (quoting Restatement (Second) of Conflict of Laws § 187, cmt. b). However, the fact that a contract is one of adhesion does not mean that it is automatically deemed *per se* unconscionable. Rather, "[a] court will . . . look at the contract and its terms with some special care . . . but it will not simply excise or ignore terms merely because . . . they may operate to the perceived detriment of the weaker party." *Id.* (quoting *Meyer v. State Farm Fire & Cas. Co.*, 85 Md.App. 83 (1990)).

### 2. **Substantive Unconscionability**

Plaintiffs argue that the arbitration agreement is substantively unconscionable for three reasons: (a) the agreement lacks mutuality because Defendant did not promise to arbitrate; (b) the agreement is silent as to who bears the responsibility for arbitration fees; and (c) the agreement's time limitations for bringing a claim are both ambiguous and unreasonable.

### a. **Lack of Mutuality**

Plaintiffs first argue that the arbitration agreement is substantively unconscionable because there is an oppressive lack of mutuality. In their opposition to the motion to dismiss and compel arbitration, however, Plaintiffs do not assert that there is a

"gross inadequacy" of consideration between the parties.  Rather, Plaintiffs restate their argument that there is no promise on the part of the employer to arbitrate whatsoever.  For the reasons explained above in the discussion regarding the existence of consideration, the proffer by the employer clearly implied that both the parties would be bound by the arbitration process.  In addition to both parties being bound by the agreement, the terms of the agreement make the exchange of rights and obligations between the contracting parties identical.  Therefore, the arbitration agreement is not so one-sided as to make it unconscionable.

> **b.    Allocation of Costs for Arbitrating Dispute**

Plaintiffs next contend that the agreement to arbitrate should be declared unconscionable because it is silent as to who bears the responsibility for the costs of arbitration.  The Supreme Court of the United States directly addressed the question of fees potentially incurred in respect to arbitration proceedings in *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000).  In *Green Tree Fin.*, the Court held that a party seeking to invalidate an arbitration agreement on the ground that arbitration would be excessively expensive bears the burden of showing the likelihood of incurring such costs.  *Id.* at 92.  Thus, an agreement's silence as to the costs of arbitration is insufficient to render an arbitration provision unenforceable.  *Id.* at 84.

14

After *Green Tree Fin.*, the Fourth Circuit in *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 n.5 (4th Cir. 2001), rejected the argument that a fee-splitting provision necessarily rendered arbitration agreements unenforceable as a matter of law.  In so deciding, the court found that a *per se* rule was inappropriate:

> The cost of arbitration, as far as its deterrent effect, cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are "too high."  Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs.

*Id.* at 556 n.5.

Applying the controlling law, Plaintiffs fail to meet their burden of proof.  Plaintiffs have presented no evidence establishing how much it would cost to proceed on an employment claim filed with the American Arbitration Association ("AAA").  Nor do Plaintiffs provide any evidence as to their respective financial abilities to pay the arbitration costs measured against a baseline of their expected costs for litigation.  Instead, Plaintiffs speculate, without producing any evidence, that arbitration may cost anywhere from $1,500 to $2,000 per day.  This kind of uninformed speculation about costs falls far short of satisfying Plaintiffs' burden of proving that the costs of proceeding against Defendant would be prohibitive and, thus, would prevent them from

15

effectively vindicating their statutory rights. *See id.* at 558 (affirming district court's decision to compel arbitration because plaintiff "has offered no evidence that he was unable to pay the $4,470.88 that he was billed by the AAA, or that the fee-splitting provision deterred him from pursuing his statutory claim or would have deterred others similarly situated.").

### c. Agreement to Modify Statute of Limitations

Plaintiffs next argue that a provision in the agreement limiting the time period during which they can bring their claims is ambiguous as well as void against public policy. Plaintiffs maintain that the agreement's time limitations are ambiguous because there are two different limitations: (1) regarding the time which an aggrieved party must give notice to the other party that a dispute exists and (2) the time which an aggrieved party must bring the claims to arbitration. The meaning of the limitation periods is unmistakably clear and are in no way ambiguous.

Additionally, Plaintiffs argue that even if the time limitations could be deduced, the 60/180 day limitations period prescribed by the agreement is unreasonably short because it is a drastic reduction from the otherwise applicable two and three year statutory limitation periods. In its simplest terms, Plaintiffs argue that the limitations period under the agreement is shorter than that afforded to them under federal and Maryland law.

16

Plaintiffs' argument has been expressly rejected by the Fourth Circuit in *In re Cotton Yarn*, 505 F.3d 274 (4th Cir. 2007).  In *In re Cotton Yarn*, the court found that this argument could be made every time a contract establishes a shorter limitations period than that of an otherwise applicable statute.  *Id.* at 288.  Consequently, given the general rule that statutory limitation periods may be shortened by contract, so long as the limitations period is not unreasonably short, Plaintiffs have not shown that the contractual limitation period is unreasonable.  *Id.* at 287.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss and compel arbitration will be granted.  Plaintiffs' motion for leave to file affidavits will also be granted.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
